IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MICHELE RAY YERBY                                                                      PLAINTIFF

V.                                            NO. 15-5264

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                              DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff, Michele Ray Yerby, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income benefits (SSI) under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.    Procedural Background:**

Plaintiff protectively filed her current application for SSI on February 28, 2013, alleging an inability to work since November 1, 2012, due to hepatitis C, ovary problems- back problems, nervous problems – shake all the time, depression, anxiety problems, isolation problems, insomnia, post-traumatic stress disorder (PTSD), leg cramps, chest pain, numbness in her fingers all the time, and bronchitis. (Doc. 9, pp. 53, 140-145, 172, 175). An administrative hearing was held on February 20, 2014, at which Plaintiff appeared with counsel and testified. (Doc. 9, pp. 35-52).

1

By written decision dated July 10, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – PTSD and panic disorder with agoraphobia. (Doc. 9, p. 22). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 9, p. 23). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: work limited to simple, routine, and repetitive tasks, involving only simple, work-related decisions, with few, if any, workplace changes, and no more than incidental contact with co-workers, supervisors, and the general public.

(Doc. 9, p. 24). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff could perform such jobs as hand packer and machine packer. (Doc. 9, p. 29).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on August 26, 2015. (Doc. 9, pp. 4-8). Subsequently, Plaintiff filed this action.(Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 10, 11). The Court has reviewed the entire transcript.

**II.   Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. <u>Ramirez v. Barnhart</u>, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's

decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s)

prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §416.920.

### III. Discussion:

Plaintiff raises the following issues in this matter: 1) Whether the ALJ failed to properly evaluate the opinions of the consulting examining physicians of record; 2) Whether the ALJ failed to comply with SSR 96-7p and 16-3p by failing to consider the statement of Social Security Field Agent J. Wells; 3) Whether the implementation of SSR 16-3p requires remand; and 4) Whether the ALJ committed error in not finding Plaintiff's morbid obesity a severe impairment. (Doc. 10).

#### A. Severe Impairment:

Plaintiff argues that the ALJ erred by failing to find her morbid obesity was a severe impairment. An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §1520(a)(4)ii).  An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §404.1521. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen**,** 870 F.2d 1392, 1395 (8th Cir. 1989). "While '[s]everity is not an onerous requirement for the claimant to meet …it is also not a toothless standard.'" Wright v. Colvin,

789 F.3d 847, 855 (8th Cir. 2015)(quoting Kirby v. Astrue, 500 F.l3d 705, 708 (8th Cir. 2007)).

In his decision, the ALJ noted Plaintiff's history of obesity, and considered the potential impact of obesity in causing or contributing to co-existing impairments. (Doc. 9, p. 23). He found that there was no evidence of any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning, and concluded it was not a severe impairment. The Court agrees. In addition, where the ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, as the ALJ did in this case, any error in failing to identify a particular impairment as "severe" at step two is harmless. Swartz v. Barnhart, 188 Fed. Appx. 361, 388 (6th Cir. 2006); Elmore v. Astrue, 2012 WL 1085487 at *12 (E.D. Mo. Mar. 5, 2012).

### B. RFC Determination:

Plaintiff argues that the ALJ failed to properly evaluate the opinions of the consulting examining physicians of record. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Gilliam's v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the

5

workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *11 (N.D. Iowa Mar. 31, 2015)(quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013)).

As stated earlier, the ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels with certain nonexertional limitations. (Doc. 9, p. 21). In his decision, the ALJ discussed the objective findings, noting that Plaintiff had no recent mental health treatment until presenting to UAMS, Springdale, on January 8, 2014. (Doc. 9, p. 27).

Prior to the relevant time period, on April 21, 2011, Mary J. Sonntag, Psy.D., conducted a Mental Diagnostic Evaluation. (Doc. 9, p. 243). Dr. Sonntag diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Major Depression, Recurrent Episode, Moderate Intensity |
| | Generalized Anxiety Disorder |
| | Methamphetamine Dependence, Sustained Full Remission |
| Axis II: | Antisocial Personality Disorder |
| Axis V: | GAF – 58 |

(Doc. 9, p. 246). Dr. Sonntag found that plaintiff demonstrated the capacity to communicate and interact in a socially adequate manner; demonstrated the capacity to speak in an intelligible and effective manner; demonstrated the capacity to persist on the tasks; and completed the tasks of the evaluation at an average pace and within an acceptable timeframe. (Doc. 9, p. 247).

Also prior to the relevant time period, on May 5, 2011, Plaintiff underwent a General Physical Examination by Dr. Tad Michael Morgan. (Doc. 9, p. 250). Dr. Morgan noted that

Plaintiff smoked ½ of a pack of cigarettes daily, the range of motion in all extremities was normal, there was no muscle weakness or atrophy, her gait and coordination were normal, she could perform all limb functions, and she had 100% normal grip in both hands. (Doc.9, pp. 250, 252-253). Dr. Morgan diagnosed Plaintiff with exogenous obesity, hepatitis C, by history, PTSD/Depression, by history, and drug addiction/rehab – by history. (Doc. 9, p. 254). Dr. Morgan concluded that Plaintiff had moderate limitations in her ability to walk, stand, lift or carry. (Doc. 9, p. 254).

During the relevant time period, on April 11, 2013, Plaintiff underwent a Mental Diagnostic Evaluation by Catherine Hubbard Adams, Ph.D. (Doc. 9, p. 264). Dr. Adams diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | PTSD |
| | Panic Disorder with agoraphobia |
| | Alcohol Dependence, in Partial Remission |
| | Amphetamine Dependence, in full Remission |
| Axis II: | Histrionic Personality Traits |
| Axis IV: | Problems with social environment, occupational, economic, access to healthcare, legal system, and primary support group |
| Axis V: | GAF – 40 |

(Doc. 9, p. 267). Dr. Adams concluded that Plaintiff's difficulties interfered with age-appropriate social relationships, grocery shopping, managing finances, and performance of most household chores and hygiene tasks, and that her interactions during the interview were socially awkward and rather exaggerated. (Doc. 9, p. 268). However, she also found that Plaintiff communicated in a manner that was effective and intelligible, had little difficulty attending and sustaining concentration on basic tasks, and had little difficulty sustaining persistence in completing work tasks. (Doc. 9, p. 268). Dr. Adams noted that Plaintiff seemed to have poor coping skills, but believed that with treatment, it seemed possible that her adaptive functioning would improve, noting that she was not then obtaining treatment. Dr.

7

Adams also found Plaintiff seemed to have difficulty completing tasks within an acceptable timeframe due to avolition, psychosis, and other symptoms. (Doc. 9, p. 268).

In an April 16, 2013, Disability Determination Explanation, non-examining consultant, Kevin Santulli, Ph.D., was reported as completing a Psychiatric Review Technique form, wherein he found Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation, each of extended duration. (Doc. 9, p. 59). In a Mental RFC Assessment also completed by Dr. Santulli, he concluded that Plaintiff was capable of work where interpersonal contact was incidental to work performed, e.g. assembly work; where complexity of tasks was learned and performed by rote, with few variables, and little judgment; and where supervision required was simple, direct and concrete (unskilled). (Doc. 9, p. 63). He reported that Plaintiff would be able to complete work with little contact from others. Dr. Santulli gave great weight to the opinion of Dr. Adams, finding it to be consistent with the totality of the evidence. (Doc. 9, p. 63).

On January 8, 2014, Dr. Derrick Gray, of UAMS Family Medical Center, saw Plaintiff, who was complaining of sinus issues, cough, upper respiratory infection, anxiety and snoring. (Doc. 9, p. 283). Regarding her anxiety, Plaintiff reported she had taken Effexor in the past which had helped. (Doc. 9, p. 283). Plaintiff was then reported as smoking one pack of cigarettes a day, using 1 bag of cannabis a month, and drinking one pint of Crown Royal with coke weekly. (Doc. 9, p. 284). Dr. Gray was going to order a sleep study and start Plaintiff on Celexa for depression and Ativan for anxiety. (Doc. 9, p. 286). On February 7, 2014, Plaintiff presented herself to UAMS Family Medical Center for recheck of her anxiety

and depression, and indicated that the Ativan helped, but only after a larger dosage was tried. (Doc. 9, p. 279). At that time, she reported smoking ½ of a pack of cigarettes daily, and was advised to quit smoking. (Doc. 9, p. 280). The dosage of Celexa was increased and it was reported that Plaintiff refused psychiatry at that point. (Doc. 9, p. 281).

At the hearing held before the ALJ on February 20, 2014, Plaintiff testified that she had been on Ativan and Celexa for five or six weeks, and before that, was using alcohol and marijuana. (Doc. 9, p. 38-39). She testified that she still smoked marijuana "some," and drank more. (Doc.9, p. 42). Plaintiff also testified that she had hepatitis, but was told at the clinic that her liver enzymes looked good. (Doc. 9, p. 42). She stated that the Ativan did help with the drinking, if she took it, and that she did not like to take pills, "but when I start shaking and get real nervous, I will take it." (Doc. 9, p. 43).

In his decision, the ALJ discussed the opinions of Dr. Sonntag, Dr. Adams, and Dr. Morgan. (Doc. 9, pp. 27-29). The ALJ accorded the opinions of the state medical and mental health professionals great weight, to the extent that there opinions did not find a disabling impairment. (Doc. 9, p. 28). He also found their opinions were consistent with the objective medical evidence of record. (Doc. 9, p. 29). The ALJ also gave little weight to the consultative examiners' GAF scores. (Doc. 9, p. 28). The ALJ noted that Dr. Morgan's opinion was given "prior to both the claimant's alleged onset date and the application date," and that his opinion was not supported by the medical evidence of record, or his own evaluation, "which show essentially benign physical examination." (Doc. 9, p. 28).

Neither Dr. Adams nor Dr. Sonntag are treating sources or non-examining sources, but are consultative examiners, meaning that they have examined the claimant on at least one occasion. The weight to be given to their opinions is determined by the factors listed under

20 C.F.R. §404.1527(c). Comstock v. Astrue, 923 F.Supp. 2d 1142, 1156 (N.D. Iowa 2013). The ALJ is not required to give reasons for the weight given to Dr. Adams' or Dr. Sonntag's opinions, because they are not treating sources. Id. In his RFC determination, the ALJ included limitations of unskilled work, and even though the ALJ did not indicate what weight he was giving Dr. Adams' or Dr. Sonntag's opinions, he clearly considered them. "The ALJ is not required to rely on one doctor's opinion entirely or chose [sic] between the opinions." House v. Colvin, No. 4:13 CV 2301 DDN, 2015 WL 1189812 at *10 (E.D. Mo. Mar. 16, 2015)(citing Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011). In addition, "where an ALJ specifically references the findings of a medical source, it is 'highly unlikely' that the ALJ did not consider and reject aspects of the sources opinion which the ALJ did not specifically mention." Loggins v. Colvin, No. 4:14CV 1362NCC, 2015 WL 3533766 at *12 (E.D. Mo. June 4, 2015)(citing Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's RFC determination and the treatment he gave to the various opinions.

### C. Statement of Agent J. Wells:

With respect to the comments of the Social Security Field Agent J. Wells, it is true that the ALJ decision does not reference the notes that J. Wells took by teleclaim on March 11, 2013. However, the record reveals that the notes were considered at the initial and reconsideration level, and that the state agency medical consultants expressly considered the teleclaim notes. (Doc. 9, pp. 57, 76). In addition, the Court cannot say that any addition of the notes in the ALJ's decision would have had any impact on his decision.

### D. SSR 96-7p and 16-3p:

10

Plaintiff argues that the implementation of Social Security Ruling 16-3p requires remand. In this case, the ALJ issued his decision denying benefits on July 10, 2014, and concluded in part that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Doc. 9, p. 26). The ALJ also discussed several relevant factors in evaluating Plaintiff's alleged symptoms.

Plaintiff points to Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, which became effective March 28, 2016, after the date of the ALJ's decision, and superseded the ruling in effect at the time of the decision, Social Security Ruling 96-7p. "Unlike SSR-96-7p, SSR 16-3p does not use the term "credibility." Martsolf v. Colvin, No. 6:16-cv-00348-NKL, 2017 WL 77424 at *4 (W.D. Mo Jan. 9, 207). Defendant argues that SSR 16-3p should not be applied retroactively.

The Court does not believe it is necessary in this case to decide the issue of retroactivity, and that the Court's reasoning in Martsolf is persuasive. In Martsolf, the Court stated:

> Both SSR 96-7p and SSR 16-3p direct that evaluation of a claimant's subjective symptoms shall consider all evidence in the record. Both Rulings also incorporate the regulations, 20 C.F.R. §§404.1529(c)(3) and 416.929(c)(3), that identify factors to be considered in evaluating the intensity, persistence and functionally-limiting effects of the symptoms, including a claimant's daily activities; the nature, duration, frequency and intensity of her symptoms; precipitating and aggravating factors; and the type of medication and other treatment or measures used for the relief of pain and other symptoms, *i.e.*, the familiar factors identified in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). But while SSR 96-7p expressly provided that a credibility finding was required to be made under those regulations, SSR 16-3p expressly provides that use of the term "credibility" was being eliminated because the SSA regulations did not use it.  81 F.R. at 14167.

Martsolf, 2017 WL 77424 at *5.

11

In the case now before the Court, the ALJ noted that Plaintiff had no recent mental health treatment until January 8, 2014, when Dr. Gray, of the UAMS Family Medical Center, examined Plaintiff. At that examination, she was started on Celexa and Ativan. (Doc. 9, pp. 27, 286). Upon recheck on February 7, 2014, it was reported that Plaintiff's thought content appeared normal, her affect appeared normal, she had good eye contact, and grossly normal short term and long-term memory. (Doc. 9, pp. 27, 281). The ALJ also reported that when Dr. Adams examined Plaintiff, she was open and cooperative, and her speech was normal in tone and volume, but pressured with a fast rhythm. (Doc. 9, pp. 27, 266). Dr. Adams found Plaintiff was able to communicate in an effective and intelligible manner, had little difficulty attending and sustaining concentration or persistence on basic task, and completed work tasks. (Doc. 9, pp. 28, 268). The ALJ acknowledged that Dr. Adams opined that Plaintiff would have difficulty coping with work type demands that required interacting with people. (Doc. 9, p. 28). The ALJ addressed this difficulty by requiring no more than incidental contact with co-workers, supervisors, and the general public.

The ALJ also discussed the fact that Plaintiff was able to dress herself, prepare simple meals, makes her bed, do laundry every other day, and go out three to four times a week, including shopping for personal or household items. It is noteworthy that although Plaintiff indicated she had not sought medical treatment for financial reasons, she continued to smoke up to one pack of cigarettes per day and drink alcohol on a weekly basis. In addition, Plaintiff refused psychiatric help when offered it by the UAMS Family Medical Center. (Doc. 9, p. 281). Such inconsistencies between Plaintiff's subjective complaints and her daily activities "detract from a claim of disabling pain and support denial of benefits." Martsolf, 2017 WL 77424 at *6.

The Court is of the opinion that in this case, as in <u>Martsolf</u>, the analysis the ALJ performed considered the entire record, reflects consideration of the appropriate factors, and is supported by substantial evidence.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed.  The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 27th day of January, 2017.

*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE